1

2

3

4

5

6

7

8              **IN THE UNITED STATES DISTRICT COURT**

9            **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11    KIMBERLY LYNN WILBURN,                    No.  2:18-CV-0994-WBS-DMC

12              Plaintiff,

13        v.                                    FINDINGS AND RECOMMENDATIONS

14    COMMISSIONER OF SOCIAL
      SECURITY,
15
                Defendant.
16

17

18              Plaintiff, who is proceeding pro se, brings this action for judicial review of a final

19    decision of the Commissioner of Social Security under 42 U.S.C. § 405(g).  Pending before the

20    Court are the parties' briefs on the merits, ECF Nos. 26, 28, and 29.

21              The Court reviews the Commissioner's final decision to determine whether it is:

22    (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a

23    whole.  See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999).  "Substantial evidence" is

24    more than a mere scintilla, but less than a preponderance.  See Saelee v. Chater, 94 F.3d 520, 521

25    (9th Cir. 1996).  It is ". . . such evidence as a reasonable mind might accept as adequate to support

26    a conclusion."  Richardson v. Perales, 402 U.S. 389, 402 (1971).  The record as a whole,

27    including both the evidence that supports and detracts from the Commissioner's conclusion, must

28    be considered and weighed.  See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones

1

1    v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  The Court may not affirm the Commissioner's

2    decision simply by isolating a specific quantum of supporting evidence.  See Hammock v.

3    Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports the administrative

4    findings, or if there is conflicting evidence supporting a particular finding, the finding of the

5    Commissioner is conclusive.  See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987).

6    Therefore, where the evidence is susceptible to more than one rational interpretation, one of

7    which supports the Commissioner's decision, the decision must be affirmed, see Thomas v.

8    Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal

9    standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th

10   Cir. 1988).

11         For the reasons discussed below, the court recommends the matter be remanded

12   for further proceedings.

13

14                 **I.  THE DISABILITY EVALUATION PROCESS**

15         To achieve uniformity of decisions, the Commissioner employs a five-step

16   sequential evaluation process to determine whether a claimant is disabled.  See 20 C.F.R.

17   §§ 404.1520 (a)-(f) and 416.920(a)-(f).   The sequential evaluation proceeds as follows:

18
19           Step 1        Determination whether the claimant is engaged in substantial gainful activity; if so, the claimant is presumed not disabled and the claim is denied;

20
21           Step 2        If the claimant is not engaged in substantial gainful activity, determination whether the claimant has a severe impairment; if not, the claimant is presumed not disabled and the claim is denied;
22

23           Step 3        If the claimant has one or more severe impairments, determination whether any such severe impairment meets or medically equals an impairment listed in the regulations; if the claimant has such an impairment, the claimant is presumed disabled and the claim is granted;

24

25

26           Step 4        If the claimant's impairment is not listed in the regulations, determination whether the impairment prevents the claimant from performing past work in light of the claimant's residual functional capacity; if not, the claimant is presumed not disabled and the claim is denied;

27

28

2

| | | |
|---|---|---|
| 1 | Step 5 | If the impairment prevents the claimant from performing past work, determination whether, in light of the claimant's residual functional capacity, the claimant can engage in other types of substantial gainful work that exist in the national economy; if so, the claimant is not disabled and the claim is denied. |

See 20 C.F.R. §§ 404.1520 (a)-(f) and 416.920(a)-(f).

To qualify for benefits, the claimant must establish the inability to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted, or can be expected to last, a continuous period of not less than 12 months.  See 42 U.S.C. § 1382c(a)(3)(A).  The claimant must provide evidence of a physical or mental impairment of such severity the claimant is unable to engage in previous work and cannot, considering the claimant's age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  See Quang Van Han v. Bower, 882 F.2d 1453, 1456 (9th Cir. 1989).  The claimant has the initial burden of proving the existence of a disability.  See Terry v. Sullivan, 903 F.2d 1273, 1275 (9th Cir. 1990).

The claimant establishes a prima facie case by showing that a physical or mental impairment prevents the claimant from engaging in previous work.  See Gallant v. Heckler, 753 F.2d 1450, 1452 (9th Cir. 1984); 20 C.F.R. §§ 404.1520(f) and 416.920(f).  If the claimant establishes a prima facie case, the burden then shifts to the Commissioner to show the claimant can perform other work existing in the national economy.  See Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988); Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986); Hammock v. Bowen, 867 F.2d 1209, 1212-1213 (9th Cir. 1989).

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

1

## II.  THE COMMISSIONER'S FINDINGS

2        Plaintiff applied for social security benefits on October 11, 2013.  See CAR 1129.[1]

3  In the application, plaintiff claims disability began on December 21, 2012.  See id.  Plaintiff's

4  claim was initially denied.  Following denial of reconsideration, plaintiff requested an

5  administrative hearing, which was held on September 13, 2016, before Administrative Law Judge

6  (ALJ) Trevor Skarda.  At the time of the hearing, Plaintiff was represented by attorney Jonathan

7  A. Hendricks.  In a February 1, 2017, decision, the ALJ concluded plaintiff is not disabled based

8  on the following relevant findings:

9
10      1.  The claimant has the following severe impairment(s): degenerative
            disc disease of the cervical spine, migraine headaches, status post
            traumatic brain injury, and depression;

11
12      2.  The claimant does not have an impairment or combination of
            impairments that meets or medically equals an impairment listed in
            the regulations;

13
14
15
16
17
18      3.  The claimant has the following residual functional capacity:  light
            work; the claimant is never able to climb ladders, ropes, or
            scaffolds; she can frequently handle, bilaterally, and occasional
            reach overhead; the claimant must avoid concentrated exposure to
            excessive noise and hazards, defined as operational control of
            dangerous, moving machinery and unprotected heights; she is
            limited to simple, routine, repetitive tasks; she is limited to a low-
            stress job, defined as having only occasional decision-making
            requirements and only occasional changes in the work setting; she
            is limited to occasional face-to-face interaction with the public;

19
20      4.  Considering the claimant's age, education, work experience,
            residual functional capacity, and vocational expert testimony, there
            are jobs that exist in significant numbers in the national economy
            that the claimant can perform.

21          See id. at 1129-41.

22

23  After the Appeals Council declined review on February 23, 2018, this appeal followed.

24  / / /

25  / / /

26  / / /

27
_____
28      [1]      Citations are the to the Certified Administrative Record (CAR) lodged on July 5,
2019, ECF No. 19.

4

1

### III.  DISCUSSION

2       In support of the instant action for judicial review, Plaintiff has submitted the

3 following:

4       ECF No. 26    "Plaintiff's Reply in Support of Motion for Summary

5                     Judgment/Remand."[2]

      ECF No. 28.   "Plaintiff's (1) Certificate of Service; (2) Traffic Collision

6                     Report (3) Medical Records – Sutter Health Memorial Hospital;

7                     (4) Medical Records – Palo Alto Medical Foundation."

8 The Court will treat Plaintiff's filing at ECF No. 26 as her opening brief.

9       Plaintiff challenges the ALJ's vocational findings and the ALJ's evaluation of

10 medical opinions offered by Drs. Hirsch, Falkenburg, and Desai.  Plaintiff also appears to

11 challenge the ALJ's credibility assessment.  In her pro se brief, Plaintiff states:

12         1.    Defendant fails to meaningfully address that the ALJ
committed legal error at step four in finding Plaintiff can perform her/my

13 past "composite" job work as it is "generally performed."
        Defendant miscasts the issue on Plaintiff's first claim of error as

14 one of substantial evidence.  The question, however, is if the ALJ
committed legal error by violating Social Security's own rules which

15 prohibit the ALJ from finding a claimant capable of her/my past work as it
is generally performed where that work is a "composite" job.  Defendant's

16 opposition does not meaningfully address this issue.
        Defendant does not address or at all rebut that the vocational

17 expert testified affirmatively to the fact that she cannot do past work and
that the one job in U.S. economy that the vocational expert chose did not

18 go with doctors NeuroPsyche eval on capacity.  The ALJ denied Plaintiff's
disability claim at step four and five strictly on the basis she could perform

19 the only one job the vocational expert found in the U.S. economy was a
swimming locker room.  This goes against the NeuroPsych eval of

20 Stanford for Plaintiff's tramatic [sic] brain injury that the Plaintiff if ever
would go back to work would need a quiet room that is not what the

21 vocational expert used they dismissed the doctors at Standord's
evaluations and professional opions [sic] and did not choose a job in the

22 U.S. economy based on doctors evaluations.
        Moreover, Defendants [sic] omits medical records only choses

23 medical records were used.  (citation omitted).  This Court and other
courts in this Circuit have reversed on the same issue specific to the

24 present case; that a job performed at a greater exertional level than under
the DOT is a composite job, and thus cannot support a finding at step four

25 & five as it is generally performed and the ignoring doctors evaluations
even to the extent not to believe the Plaintiff about her inurys [sic].

26

27      [2]    Plaintiff states this filing is a "reply to defendant, Commissioner of Social
Security's ("Defendant" or the "Commissioner") opposition and cross-motion for summary

28 Judgment.  ECF No. 26, pg. 1.  In this regard, the Court observes that this document was filed
<u>before</u> Defendant's brief.

1          For these reasons and those set forth in Plaintiff's moving papers,
2   the Court should reverse the ALJ's step for [sic] denial.  At the very least
    remand back to the ALJ's court.

3          2.      The ALJ's rejection of opinions from consulting
    neurologist Dr. Karen G. Hirsch neurology specialist in Stanford,
4   California.  The rejection of primary care Dr. Joanne Falkenburg on
    Plaintiff's medical condition.
5          Defendant's opposition also does not specifically address any of
    Plaintiff's arguments that the reasons the ALJ gave to reject both doctors
6   [sic] medical opions [sic] were erroneous as a matter of law.
           First, Defendant ignors [sic] that ALJ's conclusion that doctors
7   [sic] opions [sic] are "not consistent with the record" or that the record
    shows the "limitations are less than mild" constitutes legal error.  (citation
8   omitted).
           Second, Defendant ignors [sic] ALJ committed legal error by
9   relying on her preliminary evaluation at step two to support the ALJ's
    RFC finding, which rejected all of Plaintiff's limitations.
10         Third, Defendant does not respond to the point that the ALJ could
    not reject the doctors [sic] consulting opions [sic] on the basis that the
11  record lacked extensive mental health treatment without the ALJ
    considering the evidence that Plaintiff lacked insurance coverage to access
12  the "comprehensive" treatment Plaintiff's doctors and specialist requires
    for treatment of Plaintiff's medical conditions and that Plaintiff still does
13  not have insurance coverage to access proper treatment still.
           Fourth, Defendants make no mention of the fact that ALJ distorted
14  Plaintiffs [sic] testimony that she stopped work somehow equating to an
    admission that Plaintiff is not limited to tramatic [sic] brain injury &
15  spinal cord injury.  Post traumatic stress disorder depression, anxiety,
    adjustment disorder, dificultly [sic] walking, dificulty [sic] with ADL's.
16  Plaintiff has had three head injurys [sic] in adult life and those records left
    out.
17         Defendants [sic] opposition is limited to broad generalizations that
    the ALJ 'reasonably" evaluated the record, and it makes it so Plaintiff [sic]
18  points of error are not substantively challenged.  Given the limitations of
    these conditions will impact regular attendance and likely would cause
19  difficulties in completing an eight-hour day.
           The ALJ's legally erroneous reasons for dismissing this evidence
20  should result in remand.

21         3.      The ALJ & Defendant's present opposition mischaracterize
    Dr. Desi treatment reports which do not constitute medical opions [sic].
22         Defendant charge that Plaintiff seeks to "re-weigh."  There are two
    claims of error here.  First limiting reasoning the ALJ provided that Dr.
23  Desi treatment reports contradict RFC.
           Plaintiff is "severely" disabled in lifting, walking, sitting, standing,
24  travelling, and personal care.  There is on re-weighing the of [sic]
    evidence involved; noting ALJ & Defendants [sic] opposition
25  misunderstands & misrepresents.  Diagnosises [sic] & treatment notes and
    law officers of Stanislaus County.
26         Law officer Kathleen S. who went under cover as Debbie Frasula
    and Gracie Christmas as the apartment manager at Plaintiff's apartment
27  complex due to Plaintiff's sever [sic] complications with traumatic brain
    injury had witnessed in demeaning and humiliating effects of Plaintiff's
28  severe disabilities – this officer was the Stanislaus County's determining

6

factor for SSDI.  She told me yes as to her observance I do have a tramatic [sic] brain injury and that I would be getting approved – because she witnessed first-hand how bad the multiple brain injury's [sic] had affected me.  I the Plaintiff do feel there is discrimination.  I have a severe disability but was discriminated on basis of religion, no children, and disability's [sic] that are unseen.

My neighbor Tanya was approved for SSDI – because she has a child she lied to the ALJ stating that she could not sit at a desk for eight hours – however when she got her SSDI approval she sat on a train for over 30 days across county back & forth on an Amtrack [sic] train.  If she can sit on a train over 30 days across the US & back she can work all the hours required for the U.S. economy – she was approved because she had a child when I told the local SSA office they made excuses for her protecting her.  This is not what SSDI is for.

I am requesting a remand of my case but of hers as well.  The ALJs [sic] conclusory finding should be reversed as legal error.

ECF No. 26, pgs. 1-16.

A.    **Medical Opinions**

"The ALJ must consider all medical opinion evidence."  Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008) (citing 20 C.F.R. § 404.1527(b)).  The ALJ errs by not explicitly rejecting a medical opinion.  See Garrison v. Colvin, 759 F.3d 995, 1012 (9th Cir. 2014).  The ALJ also errs by failing to set forth sufficient reasons for crediting one medical opinion over another.  See id.

Under the regulations, only "licensed physicians and certain qualified specialists" are considered acceptable medical sources.  20 C.F.R. § 404.1513(a); see also Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012).  Where the acceptable medical source opinion is based on an examination, the ". . . physician's opinion alone constitutes substantial evidence, because it rests on his own independent examination of the claimant."  Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001).  The opinions of non-examining professionals may also constitute substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record.  See Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002).  Social workers are not considered an acceptable medical source.  See Turner v. Comm'r of Soc. Sec. Admin., 613 F.3d 1217, 1223-24 (9th Cir. 2010).  Nurse practitioners and physician assistants also are not acceptable medical sources.  See Dale v. Colvin, 823 F.3d 941, 943 (9th Cir. 2016).  Opinions from "other sources" such as nurse practitioners, physician assistants, and social

7

workers may be discounted provided the ALJ provides reasons germane to each source for doing so.  See Popa v. Berryhill, 872 F.3d 901, 906 (9th Cir. 2017), but see Revels v. Berryhill, 874 F.3d 648, 655 (9th Cir. 2017) (quoting 20 C.F.R. § 404.1527(f)(1) and describing circumstance when opinions from "other sources" may be considered acceptable medical opinions).

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals.  See Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995).  Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual, than the opinion of a non-treating professional.  See id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996); Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987).  The least weight is given to the opinion of a non-examining professional.  See Pitzer v. Sullivan, 908 F.2d 502, 506 & n.4 (9th Cir. 1990).

In addition to considering its source, to evaluate whether the Commissioner properly rejected a medical opinion the court considers whether: (1) contradictory opinions are in the record; and (2) clinical findings support the opinions.  The Commissioner may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons supported by substantial evidence in the record.  See Lester, 81 F.3d at 831. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by an examining professional's opinion which is supported by different independent clinical findings, the Commissioner may resolve the conflict.  See Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995).

A contradicted opinion of a treating or examining professional may be rejected only for "specific and legitimate" reasons supported by substantial evidence.  See Lester, 81 F.3d at 830.  This test is met if the Commissioner sets out a detailed and thorough summary of the facts and conflicting clinical evidence, states her interpretation of the evidence, and makes a finding.  See Magallanes v. Bowen, 881 F.2d 747, 751-55 (9th Cir. 1989).  Absent specific and legitimate reasons, the Commissioner must defer to the opinion of a treating or examining professional.  See Lester, 81 F.3d at 830-31.  The opinion of a non-examining professional,

8

1  without other evidence, is insufficient to reject the opinion of a treating or examining

2  professional.  See id. at 831.  In any event, the Commissioner need not give weight to any

3  conclusory opinion supported by minimal clinical findings.  See Meanel v. Apfel, 172 F.3d 1111,

4  1113 (9th Cir. 1999) (rejecting treating physician's conclusory, minimally supported opinion); see

5  also Magallanes, 881 F.2d at 751.

6          At Step 4, the ALJ summarized medical findings offered by: Nayan P. Desai,

7  M.D., who conducted a neurological evaluation of Plaintiff on April 10, 2013, see CAR 1136;

8  Karen G. Hirsch, M.D., who conducted a neurological evaluation of Plaintiff on May 22, 2013,

9  see id. at 1136-37; and Joann Falkenburg, M.D., Plaintiff's primary treating provider, see id. at

10  1137.  This evidence relates to Plaintiff's physical impairments.  As to Plaintiff's mental

11  impairments, the ALJ considered findings offered by Lauren L. Drag, Ph.D., who performed a

12  neuropsychological evaluation on December 31, 2013, see id. at 1137-38, and Paul George, M.D.,

13  Ph.D., who evaluated Plaintiff on January 3, 2014, relative to Plaintiff's traumatic brain injury,

14  see id. at 1138.  Finally, the ALJ considered reports offered by agency consultative reviewing

15  doctors – R. Fast, M.D., I. Ocrant, M.D., G. Ikawa M.D., and M. Franco, Psy.D.  See id. at 1138-

16  39.

17          The ALJ afforded "great weight" to the opinion of Dr. Fast.  See id. at 1138.  The

18  ALJ afforded "little weight" to the opinion of Drs. Ocrant and Falkenburg.  See id.  Finally, the

19  ALJ gave "partial weight" to the opinions of Drs. Ikawa and Franco.  See id. at 1139.

20          Plaintiff challenges the ALJ's analysis with respect to Drs. Deasi, Hirsch, and

21  Falkenburg.

22          1.    Drs. Desai and Hirsch

23          As to Dr. Desai, the ALJ stated:

24          Nayan P. Desai, M.D., performed a follow-up neurological evaluation of
            the claimant on April 10, 2013.  Dr. Desai noted that the claimant had a
25          post-concussion syndrome after an accident in December of 2012 and a
            history of episodic migraine headaches.  The doctor observed that the
26          claimant continued to get daily low-grade headaches, to have balance
            problems, and to have cognitive issues.  The doctor noted that the
27          claimant's intense headaches had improved somewhat.  Dr. Desai found
            the claimant to be alert and oriented, to have a symmetric face, and to have
28          a normal coordination and gait.  The doctor diagnosed the claimant with

9

post-concussion syndrome with migraine flare-ups [Exhibit 2F9]. Dr. Desai noted on July 31, 2013, that the claimant was having fewer migraine headaches. The doctor noted that counseling therapy was advised by Dr. Hirsch at Stanford, but the claimant could not make it [Exhibit 2F29]. Dr. Desai noted on September 23, 2013, that the claimant's condition demonstrated an unusually prolonged course of recovery. The doctor noted that the claimant should follow-up with Dr. Hirsch at Stanford, as her progress was not within his experience [Exhibit 2F68].

CAR 1136.

As to Dr. Hirsch, the ALJ stated:

Karen G. Hirsch, M.D., performed a neurology examination of the claimant on May 22, 2013. Dr. Hirsch observed that the claimant was alert, oriented, and in no acute distress. The doctor noted that the claimant was able to provide a full history with linear thoughts and normal naming. The doctor noted that the claimant's face, shoulder shrug, and head turn were strong, bilaterally. Dr. Hirsch found the claimant to have a normal gait and normal finger to nose. The doctor noted that the claimant had subjective decrease in sensation to light touch on the left compared to the right, but proprioception was intact [Exhibit 5F7-11]. Upon follow-up evaluation of the claimant on October 16, 2013, Dr. Hirsch noted that the claimant's language was normal. The doctor observed that the claimant had a degree of embellishment with pronator drift with her hands bobbing about in a non-physiologic manner, but when asked to hold her hands still, she was able to do so without any drift. The doctor also noted that the claimant's gait was slightly wide based, but again there was a slight degree of embellishment here. The claimant was unable to tandem and felt off balance, but when asked to do a stressed gait with walking while squatting, the reported that she felt a slight improvement, which was a non-physiologic response. Dr. Hirsch had the claimant fill out the Rivermead post-concussion symptoms questionnaire for tracking purposes and noted that she rated double vision as a 4, but when asked about double vision in her actual symptom review, she did not note any significant diplopia. The doctor told the claimant that there was nothing objectively on her exam or anything concerning her history that would merit any additional work-up. The doctor informed the claimant that while the symptoms she was experiencing were real and frustrating, they were not expected after a significant head injury [Exhibit 5F11-14]. Dr. Hirsch noted in a follow-up evaluation on March 18, 2015, that the claimant reported that things had gotten significantly better. The claimant's headaches and light sensitivity had significantly improved, and she agreed that treatment of her depression had helped to improve her overall condition significantly. She had no specific complaints at the time of the evaluation [Exhibit 7F16-18].

CAR 1136-37.

/ / /

/ / /

/ / /

10

1           Dr. Desai's records are contained in Exhibit 2F.  See CAR 1482-1565.  Records

2    from Dr. Hirsh are contained in Exhibits 5F and 7F.  See id. at 1605-29, 1646-85.  Having

3    reviewed these records, the Court finds the ALJ's summary to be accurate.  Notably, neither Dr.

4    Desai not Dr. Hirsch ever offered any opinions related to Plaintiff's functional capacity.  For this

5    reason, the Court rejects Plaintiff's contention that these doctors' records undermine the ALJ's

6    residual functional capacity finding.

7           2.    Dr. Falkenburg

8           As to Dr. Falkenburg, the ALJ stated:

9           Joann Falkenburg, M.D. the claimant's primary care provider, noted on
10   June 21, 2013, that the claimant's urinary retention issues were improving,
     she was able to walk to the store and back, and her handwriting was better.
11   Dr. Falkenburg observed that the claimant was in no acute distress.  The
     doctor's findings on cardiovascular and respiratory examination were
12   normal. The doctor's findings on examination of the claimant's abdomen
     were normal.  Dr. Falkenburg found the claimant to have normal
13   symmetric extremities and no edema.  The doctor diagnosed the claimant
     with a traumatic brain injury [Exhibit 2F19-21].  Dr. Falkenburg noted on
14   February 13, 2014, that the claimant found gabapentin medication to be
     very helpful in reducing her migraine symptoms at low doses with
15   minimal side effects.  The doctor observed that the claimant's post-
     concussion syndrome was gradually improving.  The doctor noted that the
16   claimant still had measured speech that reflected her need to concentrate,
     but speech and concentration were improved.  Dr. Falkenburg observed
17   that the claimant was well-groomed.  The doctor noted that she had some
     posterior neck spasm and tenderness in muscular areas.  The doctor noted
18   that the claimant had normal deep tendon reflexes [Exhibit 2F77-78].  Dr.
     Falkenburg noted on May 21, 2014, that the claimant's balance was
19   improving, that she was able to swim, and that she had a little dog that she
     was caring for.  The doctor noted no evidence of severe depression.  The
20   doctor noted that the claimant still had a slightly slow speech, which was
     deliberate, but she did not search for words.  The doctor noted that the
21   claimant had marked spasms at the neck and a slightly decreased range of
     motion of the shoulders [Exhibit 3F4-5].  Dr. Falkenburg noted on August
22   25, 2014, that the claimant had 4 out of 5 grip strength but full flexion and
     extension strength at the neck [Exhibit 4F18-20].  Dr. Falkenburg noted on
23   December 17, 2014, that the claimant was feeling slightly better in relation
     to her depression after having started Zoloft about a month prior [Exhibit
24   8F16-17]  Dr. Falkenburg noted on November 18, 2015, that the
     claimant's depression was improving [Exhibit 8F5-7].

25          CAR 1137.

26   / / /

27   / / /

28   / / /

             11

Dr. Falkenburg's records are contained in Exhibits 2F, 3F, 4F, and 8F.  See CAR 1482-1604, 1686-1709.  On October 1, 2014, Dr. Falkenburg prepared a check-the-box Medical Source Statement concerning Plaintiff's physical and neurological impairments and limitations.  See id. at 1577-81.

Regarding Plaintiff's physical capacity, Dr. Falkenburg opined Plaintiff can lift and carry 10 pounds occasionally and less than 10 pounds frequently.  See id. at 1577.  The doctor also opined that Plaintiff can stand and walk less than 2 hours in an 8-hour workday.  See id.  Dr. Falkenburg stated Plaintiff can sit less than 6 hours in an 8-hour day.  See id.  The doctor also stated Plaintiff does not need to alternate between sitting and standing.  See id.  Dr. Falkenburg opined that Plaintiff can never climb and balance, but can occasionally stoop, kneel, crouch, and crawl.  See id. at 1578.  The doctor stated Plaintiff can frequently reach in any direction bilaterally, but she can only occasionally handle, finger, and feel bilaterally.  See id.  Dr. Falkenburg opined Plaintiff should avoid moving machinery, heights, temperature extremes, chemicals, and dust.  See id.

Regarding Plaintiff's neurological capacity, Dr. Falkenburg opined that, while Plaintiff's speech is disturbed, she can be understood by strangers.  See id. at 1579.  The doctor noted no receptive aphasia or reflex abnormalities.  See id.

As to the weight of this evidence, the ALJ stated:

> . . .The undersigned accords little weight to the opinion of Dr. Falkenburg because the opinion is not supported by the medical record taken as a whole.  The medical record supports a reduction in the claimant's work capacity to a wide range of light work based upon the claimant's subjective complaints, the third-party statements, and her treatment history.  The claimant's degenerative disc disease of the cervical spine is well-accommodated for by a reduction to light work with manipulative limitations.  The claimant's migraine headaches and traumatic brain injury is also well-accommodated for by a reduction to light work with postural and environmental limitations.  The claimant is found able to perform a wide range of light work based upon diagnostic findings, including only mild findings on MRI of the cervical spine, normal findings on x-rays of the thoracic and lumbar spine, and normal findings on CT scans of the head and cervical spine [Exhibit 1F].  In addition, she is found able to perform a wide range of light work based upon essentially normal findings on neurological evaluations, normal findings on a neuropsychological evaluation and testing, and inconsistent subjective complaints with a post-concussion syndrome [Exhibits 1F; 2F9, 14, 29, and 68; 5F7-23; and 7F16-18].  Furthermore, the claimant is found to be able to perform a wide

1   range of light work based upon the effectiveness of treatment in improving
    her symptoms [Exhibits 2F9, 14, 29, 68, and 77-78 and 7F16-18].  Lastly,
2   while Dr. Falkenburg's treatment notes show some limited positive
    findings on physical examinations, the findings were generally mild or of
3   short duration and the doctor noted improvement in the claimant's
    condition with treatment [Exhibits 2F, 3F, 4F, and 8F].  Overall, the
4   claimant is found able to perform a wide range of light work based upon
    her subjective complaints, treatment history, objective findings, and
5   activities of daily living.

6   CAR 1138-39.

7       The Court finds no error in the ALJ's analysis concerning opinions rendered by

8   Dr. Falkenburg.  As noted above, the doctor's opinions are outlined in a check-the-box Medical

9   Source Statement.  This statement does not, however, cite specific objective clinical findings to

10  support the conclusions reached.  For this reason alone, the ALJ was entitled to discount Dr.

11  Falkenburg's Medical Source Statement.  See Meanel, 172 F.3d at 1113; see also Magallanes,

12  881 F.2d at 751.

13      **B.**      **Credibility**

14      The Commissioner determines whether a disability applicant is credible, and the

15  Court defers to the Commissioner's discretion if the Commissioner used the proper process and

16  provided proper reasons.  See Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996).  An explicit

17  credibility finding must be supported by specific, cogent reasons.  See Rashad v. Sullivan, 903

18  F.2d 1229, 1231 (9th Cir. 1990).  General findings are insufficient.  See Lester v. Chater, 81 F.3d

19  821, 834 (9th Cir. 1995).  Rather, the Commissioner must identify what testimony is not credible

20  and what evidence undermines the testimony.  See id.  Moreover, unless there is affirmative

21  evidence in the record of malingering, the Commissioner's reasons for rejecting testimony as not

22  credible must be "clear and convincing."  See id.; see also Carmickle v. Commissioner, 533 F.3d

23  1155, 1160 (9th Cir. 2008) (citing Lingenfelter v Astrue, 504 F.3d 1028, 1936 (9th Cir. 2007),

24  and Gregor v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006)).

25  / / /

26  / / /

27  / / /

28  / / /

13

1    If there is objective medical evidence of an underlying impairment, the

2    Commissioner may not discredit a claimant's testimony as to the severity of symptoms merely

3    because they are unsupported by objective medical evidence.  See Bunnell v. Sullivan, 947 F.2d

4    341, 347-48 (9th Cir. 1991) (en banc).  As the Ninth Circuit explained in Smolen v. Chater:

5          The claimant need not produce objective medical evidence of the
       [symptom] itself, or the severity thereof.  Nor must the claimant produce
6      objective medical evidence of the causal relationship between the
       medically determinable impairment and the symptom.  By requiring that
7      the medical impairment "could reasonably be expected to produce" pain or
       another symptom, the Cotton test requires only that the causal relationship
8      be a reasonable inference, not a medically proven phenomenon.

9      80 F.3d 1273, 1282 (9th Cir. 1996) (referring to the test established in
       Cotton v. Bowen, 799 F.2d 1403 (9th Cir. 1986)).
10

11    The Commissioner may, however, consider the nature of the symptoms alleged,

12    including aggravating factors, medication, treatment, and functional restrictions.  See Bunnell,

13    947 F.2d at 345-47.  In weighing credibility, the Commissioner may also consider: (1) the

14    claimant's reputation for truthfulness, prior inconsistent statements, or other inconsistent

15    testimony; (2) unexplained or inadequately explained failure to seek treatment or to follow a

16    prescribed course of treatment; (3) the claimant's daily activities; (4) work records; and (5)

17    physician and third-party testimony about the nature, severity, and effect of symptoms.  See

18    Smolen, 80 F.3d at 1284 (citations omitted).  It is also appropriate to consider whether the

19    claimant cooperated during physical examinations or provided conflicting statements concerning

20    drug and/or alcohol use.  See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002).  If the

21    claimant testifies as to symptoms greater than would normally be produced by a given

22    impairment, the ALJ may disbelieve that testimony provided specific findings are made.  See

23    Carmickle, 533 F.3d at 1161 (citing Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir. 1989)).

24    At Step 4, he ALJ assessed the credibility of Plaintiff's statements and testimony.

25    See CAR 1134-35, 1138.  The ALJ summarized Plaintiff's statements and testimony as follows:

26          The claimant, born on August 24, 1975, is currently forty-one years old.
       She alleges an onset date of disability of December 21, 2012.  Her alleged
27     impairments include a traumatic brain injury and migraines.  She claims
       that she is unable to retain information or handle soft noises and that she
28     has balance issues and blurry vision [Exhibit 2E2].  The claimant alleges

14

that she is not able to get out of bed or get dressed on some days due to neck and back pain.  She claims that she experiences debilitating migraines and chronic fatigue.  She claims that she has no sense of time and problems with memory and concentration.  The claimant alleges that she is unable to find the right words to effectively express herself.  She claims that her conditions affect her ability to sleep, lift, squat, bend, stand, reach, walk, sit, kneel, talk, hear, climb stairs, see, remember, complete tasks, concentrate, understand, follow instructions, use her hands, and get along with others [Exhibit 6E].  In updated Disability Reports, the claimant alleges that she still struggles with her memory and activities of daily living.  She also claims that she is experiencing worsening depression [Exhibits 8E3 and 12E1].  The claimant testified that she requires assistance from someone else two to three days per week. She stated that on bad days she cannot coordinate her arms and legs.  She informed that she has fallen on a monthly basis.

CAR 1134-35.

After summarizing statements from three lay witnesses and the medical findings of the various doctors, discussed above, the ALJ provided the following boilerplate concluding statement:

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce the above alleged symptoms; however, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision. Accordingly, these statements have been found to affect the claimant's ability to work only to the extent they can reasonably be accepted as consistent with the objective medical and other evidence.

CAR 1138.

The Court finds that the ALJ's boilerplate conclusion is precisely the kind of discussion disfavored in Bunnell v. Sullivan, 947 F.2d at 347-48, and Smolen v. Chater, 80 F.3d at 1282.  Specifically, while the ALJ found that Plaintiff's subjective complaints could reasonably be caused by her medically determinable impairments, the ALJ concludes they are not credible because they are "not entirely consistent with the medical evidence. . . ."  The ALJ offered no additional analysis.  The question, then, is whether the ALJ's error can be considered harmless.

The Ninth Circuit has applied harmless error analysis in social security cases in a number of contexts.  For example, in Stout v. Commissioner of Social Security, 454 F.3d 1050 (9th Cir. 2006), the court stated that the ALJ's failure to consider uncontradicted lay witness testimony could only be considered harmless ". . . if no reasonable ALJ, when fully crediting the

15

testimony, could have reached a different disability determination." Id. at 1056; see also Robbins v. Social Security Administration, 466 F.3d 880, 885 (9th Cir. 2006) (citing Stout, 454 F.3d at 1056).  Similarly, in Batson v. Commissioner of Social Security, 359 F.3d 1190 (9th Cir. 2004), the court applied harmless error analysis to the ALJ's failure to properly credit the claimant's testimony.  Specifically, the court held:

> However, in light of all the other reasons given by the ALJ for Batson's lack of credibility and his residual functional capacity, and in light of the objective medical evidence on which the ALJ relied, there was substantial evidence supporting the ALJ's decision.  Any error the ALJ may have committed in assuming that Batson was sitting while watching television, to the extent that this bore on an assessment of ability to work, was in our view harmless and does not negate the validity of the ALJ's ultimate conclusion that Batson's testimony was not credible.

> Id. at 1197 (citing Curry v. Sullivan, 925 F.2d 1127, 1131 (9th Cir. 1990)).
,

In Curry, the Ninth Circuit applied the harmless error rule to the ALJ's error with respect to the claimant's age and education.  The Ninth Circuit also considered harmless error in the context of the ALJ's failure to provide legally sufficient reasons supported by the record for rejecting a medical opinion.  See Widmark v. Barnhart, 454 F.3d 1063, 1069 n.4 (9th Cir. 2006).

The harmless error standard was applied in Carmickle v. Commissioner, 533 F.3d 1155 (9th Cir. 2008), to the ALJ's analysis of a claimant's credibility.  Citing Batson, the court stated: "Because we conclude that . . . the ALJ's reasons supporting his adverse credibility finding are invalid, we must determine whether the ALJ's reliance on such reasons was harmless error."  See id. at 1162.  The court articulated the difference between harmless error standards set forth in Stout and Batson as follows:

> . . . [T]he relevant inquiry [under the Batson standard] is not whether the ALJ would have made a different decision absent any error. . . it is whether the ALJ's decision remains legally valid, despite such error.  In Batson, we concluded that the ALJ erred in relying on one of several reasons in support of an adverse credibility determination, but that such error did not affect the ALJ's decision, and therefore was harmless, because the ALJ's remaining reasons *and ultimate credibility determination* were adequately supported by substantial evidence in the record.  We never considered what the ALJ would do if directed to reassess credibility on remand – we focused on whether the error impacted the *validity* of the ALJ's decision. Likewise, in Stout, after surveying our precedent applying harmless error on social security cases, we concluded that "in each case, the ALJ's error . . . was inconsequential to the *ultimate nondisability determination*."

1

2

3

4

5

> Our specific holding in <u>Stout</u> does require the court to consider whether the
> ALJ would have made a different decision, but significantly, in that case
> the ALJ failed to provide *any reasons* for rejecting the evidence at issue.
> There was simply nothing in the record for the court to review to determine
> whether the ALJ's decision was adequately supported.

> <u>Carmickle</u>, 533 F.3d at 1162-63 (emphasis in original; citations omitted).

6   Thus, where the ALJ's errs in not providing any reasons supporting a particular

7 determination (i.e., by failing to consider lay witness testimony), the <u>Stout</u> standard applies and

8 the error is harmless if no reasonable ALJ could have reached a different conclusion had the error

9 not occurred.  Otherwise, where the ALJ provides analysis but some part of that analysis is

10 flawed (i.e., some but not all of the reasons given for rejecting a claimant's credibility are either

11 legally insufficient or unsupported by the record), the <u>Batson</u> standard applies and any error is

12 harmless if it is inconsequential to the ultimate decision because the ALJ's disability

13 determination nonetheless remains valid.

14   Under either standard, the Court finds the ALJ's error is not harmless.  Applying

15 <u>Stout</u>, the error is harmless if no reasonable ALJ could have reached a different conclusion had

16 the ALJ provided a more robust analysis of Plaintiff's credibility.  Under this standard, the Court

17 cannot say that no reasonable ALJ could have reached a different conclusion.  To the point,

18 because the ALJ provided no substantive analysis, it is impossible to say one way or the other.

19 Applying <u>Batson</u>, the error is harmless if it is inconsequential to the ultimate conclusion of non-

20 disability.  Again, the Court cannot find that the ALJ's failure to provide a proper credibility

21 analysis is inconsequential here.  It is entirely possible that, had the ALJ properly considered

22 Plaintiff's credibility, the ALJ might have concluded Plaintiff's statements were in fact credible

23 and found Plaintiff disabled as a result.

24   The matter should be remanded for further administrative proceedings.

25 ///

26 ///

27 ///

28 ///

1

### C.     Vocational Findings

2          The Medical-Vocational Guidelines (Grids) provide a uniform conclusion about

3    disability for various combinations of age, education, previous work experience, and residual

4    functional capacity.  The Grids allow the Commissioner to streamline the administrative process

5    and encourage uniform treatment of claims based on the number of jobs in the national economy

6    for any given category of residual functioning capacity.  See Heckler v. Campbell, 461 U.S. 458,

7    460-62 (1983) (discussing creation and purpose of the Grids).

8          The Commissioner may apply the Grids in lieu of taking the testimony of a

9    vocational expert only when the Grids accurately and completely describe the claimant's abilities

10   and limitations.  See Jones v. Heckler, 760 F.2d 993, 998 (9th Cir. 1985); see also Heckler v.

11   Campbell, 461 U.S. 458, 462 n.5 (1983).  Thus, the Commissioner generally may not rely on the

12   Grids if a claimant suffers from non-exertional limitations because the Grids are based on

13   exertional strength factors only.[3]  See 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00(b).

14   "If a claimant has an impairment that limits his or her ability to work without directly affecting

15   his or her strength, the claimant is said to have non-exertional . . . limitations that are not covered

16   by the Grids."  Penny v. Sulliacvan, 2 F.3d 953, 958 (9th Cir. 1993) (citing 20 C.F.R., Part 404,

17   Subpart P, Appendix 2, § 200.00(d), (e)).  The Commissioner may, however, rely on the Grids

18   even when a claimant has combined exertional and non-exertional limitations, if non-exertional

19   / / /

20

---

21          [3]     Exertional capabilities are the primary strength activities of sitting, standing,
walking, lifting, carrying, pushing, or pulling and are generally defined in terms of ability to
22   perform sedentary, light, medium, heavy, or very heavy work.  See 20 C.F.R., Part 404, Subpart
P, Appendix 2, § 200.00(a).  "Sedentary work" involves lifting no more than 10 pounds at a time
23   and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  See 20
C.F.R. §§ 404.1567(a) and 416.967(a).  "Light work" involves lifting no more than 20 pounds at
24   a time with frequent lifting or carrying of objects weighing up to 10 pounds.  See 20 C.F.R. §§
404.1567(b) and 416.967(b).  "Medium work" involves lifting no more than 50 pounds at a time
25   with frequent lifting or carrying of objects weighing up to 25 pounds.  See 20 C.F.R. §§
404.1567(c) and 416.967(c).  "Heavy work" involves lifting no more than 100 pounds at a time
26   with frequent lifting or carrying of objects weighing up to 50 pounds.  See 20 C.F.R. §§
404.1567(d) and 416.967(d).  "Very heavy work" involves lifting objects weighing more than 100
27   pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more.  See 20
C.F.R. §§ 404.1567(e) and 416.967(e).  Non-exertional activities include mental, sensory,
28   postural, manipulative, and environmental matters which do not directly affect the primary
strength activities.  See 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00(e).

1    limitations do not impact the claimant's exertional capabilities.  See Bates v. Sullivan, 894 F.2d

2    1059, 1063 (9th Cir. 1990); Polny v. Bowen, 864 F.2d 661, 663-64 (9th Cir. 1988).

3           In cases where the Grids are not fully applicable, the ALJ may meet his burden

4    under step five of the sequential analysis by propounding to a vocational expert hypothetical

5    questions based on medical assumptions, supported by substantial evidence, that reflect all the

6    plaintiff's limitations.  See Roberts v. Shalala, 66 F.3d 179, 184 (9th Cir. 1995).  Specifically,

7    where the Medical-Vocational Guidelines are inapplicable because the plaintiff has sufficient

8    non-exertional limitations, the ALJ is required to obtain vocational expert testimony.  See

9    Burkhart v. Bowen, 587 F.2d 1335, 1341 (9th Cir. 1988).

10          Hypothetical questions posed to a vocational expert must set out all the substantial,

11   supported limitations and restrictions of the particular claimant.  See Magallanes v. Bowen, 881

12   F.2d 747, 756 (9th Cir. 1989).  If a hypothetical does not reflect all the claimant's limitations, the

13   expert's testimony as to jobs in the national economy the claimant can perform has no evidentiary

14   value.  See DeLorme v. Sullivan, 924 F.2d 841, 850 (9th Cir. 1991).  While the ALJ may pose to

15   the expert a range of hypothetical questions based on alternate interpretations of the evidence, the

16   hypothetical that ultimately serves as the basis for the ALJ's determination must be supported by

17   substantial evidence in the record as a whole.  See Embrey v. Bowen, 849 F.2d 418, 422-23 (9th

18   Cir. 1988).

19          Plaintiff contends the ALJ erred in concluding she can perform her past relevant

20   work as actually performed because the job is a "composite" job.  Plaintiff misstates the ALJ's

21   vocational finding.  At Step 5, the ALJ concluded Plaintiff cannot perform her past relevant work.

22   See CAR 1140-41.  Relying on vocational expert testimony which the ALJ found consistent with

23   the Dictionary of Occupational Titles, the ALJ concluded Plaintiff can perform other work that

24   exists in the national economy.  See id.  Plaintiff's argument concerning past relevant work is,

25   therefore, unpersuasive.

26   / / /

27   / / /

28   / / /

19

1

### IV.  CONCLUSION

2          Based on the foregoing, the undersigned recommends that:

3          1.     Defendant's cross-motion for summary judgment, ECF No. 29, be denied;

4    and

5          2.     The Commissioner's final decision be reversed and this matter be

6    remanded for further proceedings consistent with these findings and recommendations.

7          These findings and recommendations are submitted to the United States District

8    Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 14 days

9    after being served with these findings and recommendations, any party may file written

10   objections with the court.  Responses to objections shall be filed within 14 days after service of

11   objections.  Failure to file objections within the specified time may waive the right to appeal.  See

12   Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

13

14

15   Dated:  February 25, 2021

16                                        _____
                                          DENNIS M. COTA
17                                        UNITED STATES MAGISTRATE JUDGE

18

19

20

21

22

23

24

25

26

27

28